IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA,

XIONG NICK YANG,

    Petitioner,                    No. CIV-S-05-0943 JAM KJM P

    vs.

JEANNE WOODFORD,                 ORDER AND

    Respondent.                FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a California prisoner proceeding with an amended application for writ of habeas corpus under 28 U.S.C. § 2254.  In addition, petitioner requests an evidentiary hearing on his claim of ineffective assistance of counsel.  Petitioner was convicted in 2001 of multiple counts, including second degree and attempted murder, assault with a firearm and discharging a firearm.  With sentence enhancements, he is serving a determinate term sentence of seven years and an indeterminate term sentence of 65-years-to-life.

        Petitioner seeks relief on the grounds that: (1) two inapplicable 25-to-life enhancements were imposed on him; (2) the prosecutor discouraged co-defendants from testifying at his trial; (3) trial counsel rendered ineffective assistance of counsel by not objecting to the prosecutor's actions and in failing to press for the admission of co-defendant Judo Vang's statement to the police; (4) petitioner's sentence was based on a theory of liability dependent on

1

facts not found by the jury; (5) the trial court imposed gang enhancements in violation of the plea bargain, and (6) petitioner was prejudiced by the cumulative wrongs in the foregoing. Upon careful consideration of the record and the applicable law, the undersigned will order that the request for an evidentiary hearing be denied and recommend that petitioner's application for habeas corpus relief be denied.

I. Factual And Procedural Background

On direct appeal, the California Court of Appeal summarized the facts presented at petitioner's trial as follows:

> Prosecution Case-in-Chief
>
> On April 23, 1998, at approximately 7:30 p.m., Nai Saechao, his wife Muey Saetern, and Lai Saechao went to a park to play basketball. Nai drove his car with Lai in the front passenger seat and Muey in the rear seat. When Nai stopped his car at the park, a Toyota Camry and a Honda Civic parked as to prevent Nai's car from moving.
>
> The Camry and the Civic contained Hmong gang members from two related street gangs: Tiny Little Rascals and Masters of Destruction (MOD).
>
> Defendant was driving the Camry. He had four passengers: Mong Cha in the right front seat, Chi Vang in the left rear seat, Pheng Vang in the middle rear seat, and Judo Vang in the right rear seat. Tou Vue was driving the Civic. Cha Vue was in the right front seat. Benjamin Xiong and an unidentified person were in the rear seats.
>
> As Lai Saechao got out of Nai Saechao's car, defendant got out of the Camry and asked Lai about his gang affiliation. Lai responded that he was not a member of any gang. For about 20 seconds, defendant and Mong Cha continued to ask Lai what gang he was affiliated with. Lai heard someone state, "this is MOD," and then heard a gun click. Xiong saw defendant holding a chrome handgun. According to Xiong, defendant pointed the gun into Nai Saechao's car and fired several shots.
>
> When Lai Saechao heard the hand gun click, he began to run from the area. As he fled, he was shot once in the back and fell to the ground. All the shots sounded like they had come from the same weapon.

/////

>Muey Saetern did not see who fired the shots. When the shooting commenced, she put her head down and ultimately was shot once in the left foot.
>
>After the shooting, defendant reentered the Camry and drove away. As he drove, he handed the handgun to Mong Cha, who sat with the weapon on his lap. The other weapon, a silver handgun, was next to Mong Cha.
>
>Nai Saechao suffered five gunshot wounds, one of which was fatal.
>
>Defense Case
>
>Defendant testified on his own behalf. He admitted being present at the park on the night of the shooting and admitted possessing a handgun, but he denied firing any of the shots.
>
>Defendant pulled his Camry next to Nai Saechao's car because one of defendant's passengers wanted to see who was in Nai's car. Defendant heard shots fired shortly after he and two passengers stepped out of the Camry. Believing he was being shot at, defendant drew his handgun and pointed it in the direction of Lai Saechao. However, by the time he did so, Lai had already been shot and was on the ground.
>
>Defendant testified that when he heard the shots, he turned to look in the direction where the shooting was coming from. He saw Mong Cha, whom he believed was the shooter.
>
>Shortly after the shooting, Judo Vang told police that he had seen Mong Cha fire the shots into Nai Saechao's car. Vang also told police that when defendant reentered his car after the shooting, he stated that his gun had jammed and that he was unable to fire it.
>
>During trial, outside the jury's presence, the defense called Vang to testify but he refused to answer any questions, even after being advised that he no longer had Fifth Amendment protection regarding the facts of the case. The trial court found him in contempt and had him removed from the courtroom.

Resp't's Ex. C at 4-6.

On May 22, 2001, a jury convicted petitioner of second degree murder of Nai Saechao (Cal. Pen. Code §187(a), 189); attempted murder of Lai Saechao (Cal. Pen. Code §187, 664); assault with a firearm on Muey Saetern (Cal. Pen. Code §245(b)); and discharging a

/////

/////

3

firearm at an occupied motor vehicle (Cal. Pen. Code § 246). CT 222-228. As noted by the state court of appeal, the jury found a total eight enhancements true:

> 2.[1]  [A] principal was armed with a firearm [Cal. Pen. Code §12922(a)(1)]
>
> 3.  [D]efendant personally inflicted great bodily injury on Nai Saechao [§12022.7(a)]
>
> 4.  [D]efendant personally used a firearm [§12022.5(a)(1) and §12022.53(b)]
>
> 5.  [D]efendant was a principal and a principal personally used a firearm [§12022.53(b) and (e)(1)]
>
> 6.  [D]efendant personally and intentionally discharged a firearm [§12022.53(c)]
>
> 7.  [D]efendant was a principal and a principal personally and intentionally discharged a firearm [§12022.53(c) and (e)(1)]
>
> 8.  [D]efendant personally and intentionally discharged a firearm causing great bodily injury and death to Nai Saechao [§12022.53(d)]
>
> 9.  [D]efendant was a principal and a principal personally and intentionally discharged a firearm causing great bodily injury to Nai Saechao [§12022.53(d) and (e)(1)]
>
> Defendant admitted an enhancement alleging he and his codefendants committed the offenses for the benefit of, at the direction of, and in association with, a criminal street gang [§186.22(b)(1)]

Resp't's Ex. C at 2-3; CT 222-228.

On August 2, 2001, petitioner filed a motion for new trial. See CT 229 et seq. The motion was based on a new declaration of Mong Cha, who stated that he in fact was the shooter, and similar corroborating testimony from Judo Vang. CT 241-242, 256-258. On December 28, 2001, the court held a hearing on petitioner's motion for new trial. RT 1203 et seq. Following the hearing and briefing by the parties, the court weighed the evidence that had

---

[1] Enhancement No. 1 was dismissed during trial.

4

come in at trial with the newly available evidence from Cha and Vang. While the court agreed that Cha's and Vang's testimony raised a reasonable doubt as to the identity of the shooter, it concluded there was sufficient evidence presented at trial and at the motion for new trial to convict petitioner as an aider and abettor to the crimes. As a principal and aider and abettor, the court offered, the petitioner would be liable under the natural and probable consequences doctrine for the acts of the shooter. Therefore, the court struck the enhancements related to personal use of a firearm and the personal infliction of great bodily injury (enhancements 3, 6 and 8) while upholding the underlying convictions and enhancements 2, 4, 5, 7 and 9. RT 1232-1251, 1275-1276.

Petitioner previously has presented his claims to the state courts, to the extent discussed claim by claim below.

II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").

Although "AEDPA" does not require a federal habeas court to adopt any one methodology," Lockyer v. Andrade, 538 U.S. 63, 71 (2003), there are certain principles which guide its application.

/////

First, the "contrary to" and "unreasonable application" clauses are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of clearly established federal law. Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002). "Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

Second, the court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). So long as the state court adjudicated petitioner's claims on the merits, its decision, no matter how brief, is entitled to deference. Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000). However, when the state court does not issue a "reasoned opinion," this court must undertake an independent review of the claims. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

/////

Third, in determining whether a state court decision is entitled to deference, it is not necessary for the state court to cite or even be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). Moreover, a state court opinion need not contain "a formulary statement" of federal law, so long as the fair import of its conclusion is consonant with federal law. Id.

III. Petitioner's Claims

  1. 25-Years-To-Life Enhancements

First, petitioner asserts his right to due process was violated by the imposition of two inapplicable 25-years-to-life sentence enhancements under California Penal Code §12022.53(d) and (e)(1). Am. Pet. at 9-10. Petitioner raised this claim for the first time in a petition for writ of habeas corpus filed in the Superior Court of Sacramento County; subsequent petitions to the California Court of Appeal and the California Supreme Court were denied without comment. Resp't's Exs. H-K.

After the trial court struck the three enhancements related to personal use of a firearm and the personal infliction of great bodily injury, the court sentenced petitioner under the second degree murder charge to one term of 15-years-to-life. Based on § 12022.53(d) and (e)(1), the court also ordered a 25-years-to-life enhancement and ordered it to run consecutively with the other sentences. As to the attempted murder charge, the court imposed the mid-term of seven years for the conviction, and a 25-years-to-life enhancement pursuant to § 12022.53(d) and (e)(1). As to the discharge of a weapon at an occupied motor vehicle charge, the court imposed a mid-term of five years and a 25-to-life enhancement based on the same sections as above. Answer at 1:11-21.[2] Petitioner asserts the court should have struck the enhancements as to second degree murder, attempted murder and discharge of a firearm at an occupied motor

---

[2] In respondent's answer, there are two pages marked "1." This reference is to the second page marked 1, which immediately follows the first.

vehicle, in addition to the personal use enhancements, because the jury did not find him to be a principal in the foregoing crimes.

The Superior Court rejected this claim, reasoning as follows:

> Petitioner first claims that the trial court acted in excess of its jurisdiction when it imposed two 25-year-to-life enhancements under Penal Code §12022.53(d) and (e)(1). He admits that the enhancement may be applied to a gang member who is a principal in a listed crime, and he admits that a gang allegation under Penal Code § 186.22 (b) was found true against him. However, he claims he was not a "principal" in the offense, because he was found guilty under the "natural and probable consequences" doctrine, and under that doctrine, he claims that he was a principal only in the target crime of assault with a firearm and not a principal in the greater crime. Petitioner also claims that his appellate counsel was ineffective in failing to raise this claim on appeal of the case.
>
> Petitioner misunderstands accomplice liability. "Under California law, a person who aids and abets the commission of a crime is a 'principal' in the crime, and thus shares the guilt of the actual perpetrator. ([Penal Code] §31.) [¶] Accomplice liability is 'derivative,' that is, it results from an act by the perpetrator to which the accomplice contributed. [Citation omitted.] '[W]hen an accomplice chooses to become a part of the criminal activity of another, [he or] she says in essence, "your acts are my acts," and forfeits [his or] her personal identity. We euphemistically may impute the actions of the perpetrator to the accomplice by "agency" doctrine; in reality, we demand that [he or] she who chooses to aid in a crime forfeits [his or] her right to be treated as an individual.' [Citation omitted.] .... [A]n aider and abettor is a person who, 'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' [Citation omitted.]  [¶] It sometimes happens that an accomplice assists or encourages a confederate to commit one crime, and the confederate commits another, more serious crime (the nontarget offense). Whether the accomplice may be held responsible for that nontarget offense turns not only upon consideration of the general principles of accomplice liability..., but also upon a consideration of the 'natural and probable consequences' doctrine....[T]he 'natural and probable consequences' doctrine... is an 'established rule' of American jurisprudence [and] is based on the recognition that 'aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion'" (People v. Prettyman (1996) 14 Cal. 4th 248, 259-260).

> In other words, a defendant is an aider and abettor of the non-target crime, if the defendant aided and abetted a target crime and the natural and probable consequences of the target crime was the non-target crime. A defendant convicted under such a theory is still convicted as an aided [*sic*] and abettor, who is a "principal" to the non-target crime.
>
> As such, petitioner fails to state a prima facie case for relief on this claim, requiring its denial (In re Bower (1985) 38 Cal. 3d 865).

Resp't's Ex. G at 1-2.

Petitioner's challenge to his sentence enhancements arises from his own novel interpretation of California law regarding "principal" and "aider and abettor" liability. In most cases, interpretation of state laws must be left to the states. See, e.g., Bains v. Cambra, 204 F.3d 964, 972 (9th Cir. 2000). Moreover, petitioner's only reference to a violation of federal law is a conclusory statement that the Superior Court's rejection of his habeas claim is an unreasonable application of In re Winship and Jackson v. Virginia.[3] Traverse at 40. Petitioner fails to articulate how the decision of the Superior Court is contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This claim should be rejected.

2. Prosecutor's Scheme to Discourage Co-Defendants from Testifying

Next, petitioner asserts his rights to compulsory and due process were violated because the prosecutor employed a scheme to keep his three co-defendants from testifying at trial. Am. Pet. at 11-18. He argues that the testimony from his co-defendants was material and its absence had a "substantial and injurious" effect on his trial and a prejudicial effect on the jury's deliberation in his case. Id.; Traverse at 59-60. Petitioner first raised these claims in his state habeas petition filed in the Superior Court of Sacramento County; the petition was denied in

---

[3] The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979)

9

a reasoned decision. Resp't's Exs. F, G. Petitioner subsequently raised the same claims in state habeas petitions filed in the California Court of Appeal and the California Supreme Court. Resp't's Exs. H, J. Both were denied without comment, meaning the reasoned decision of the Superior Court, as follows, was in effect adopted:

> Petitioner's second claim is that the prosecutor deliberately arranged things so that petitioner's codefendants would not testify at petitioner's trial, for fear of risking forfeiture of their plea bargains. He also claims ineffective assistance of appellate counsel in failing to raise the issue on appeal.
>
> There is no need to assess whether there is any validity to this claim, as petitioner has failed to show prejudice, in failing to set forth and support with reasonably available documentary evidence what that testimony of any codefendant would have been, had that person testified at petitioner's trial, that would have been reasonably likely to have a made a difference in the outcome of the trial (see In re Malone (1996) 12 Cal. 4th 935). It is true that two of his codefendants later gave testimony at the motion for new trial; however, the trial court struck a few enhancements in response to that testimony and otherwise upheld the verdicts, as trial testimony coupled with the new trial motion testimony still established petitioner's accomplice liability for the crimes, and the Third District Court of Appeal affirmed this decision, reaching the same conclusion. Petitioner shows no other potential testimony that could have been given at trial that would have been reasonably likely to have made a difference in the outcome. Therefore, petitioner's second claim is denied, as well (Bower, supra).

Resp't's Ex. G at 2-3; see also Resp't's Exs. I, K.

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986). However, misconduct does not, per se, violate a petitioner's constitutional rights. Jeffries v. Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden, 477 U.S. at 181, and Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)). Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted). See also Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v. DeChristoforo, 416 U.S. 637,

1 643 (1974); Turner v. Calderon, 281 F.3d 851, 868 (9th Cir. 2002).  Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice.  Johnson, 63 F.3d at 930 (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)); see also Darden, 477 U.S. at 181-83; Turner, 281 F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

Petitioner's co-defendants did enter into plea agreements with the prosecutor that kept them from testifying at petitioner's trial.  RT 1235-1239; see also CT 233:12-18 (declaration of petitioner's trial counsel).  As part of those agreements, the co-defendants were not supposed to be sentenced until after petitioner's trial.  RT 787-789.  This effectively sent a message to the co-defendants: testify at petitioner's trial and suffer the consequences, i.e., lose the plea deal.  See RT 1232-1239 (court's discussion of motion for new trial).  Naturally, counsel for the co-defendants instructed their clients not to testify and not to be interviewed by petitioner's counsel.  As a result of the plea agreements and advice from counsel, the co-defendants offered no testimony at trial.  In ruling on a motion for new trial, the trial court concluded these agreements created a situation in which the co-defendants would be unwilling to testify for fear of making an admission that would cause the loss of their plea agreements, or otherwise incriminate them.  RT 1235-1239.

Considering this claim, the Third District Court of Appeal concluded:

> . . . The trial court properly found [after hearing testimony from the co-defendants] that even in the version of events described by Mong Cha and Judo Vang, defendant was an aider and abettor of all the offenses.

/////
/////
/////
/////

11

> "[A]n aider and abettor is a person who, 'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' [Citation.]" (*People v. Prettyman* (1996) 14 Cal. 4th 248, 259, quoting *People v. Beeman* (1984) 35 Cal.3d 547, 561.)
>
> Defendant conceded in his testimony that he got out of his car armed with a handgun. Victim Lai Saechao testified that defendant and Mong Cha both questioned him about his gang affiliation. Evidence submitted on the new trial motion established that when defendant reentered his car after the shooting, he complained that his gun had jammed and that he was unable to fire it.
>
> Evidence that Mong Cha fired his gun *but defendant did not* does not "render a different result probable on retrial" of the crucial issue whether defendant "aid[ed], promote[d], encourage[d], or instigate[d]" Mong Cha's shooting while acting with "knowledge of" his "unlawful purpose" and with "the intent or purpose of committing, encouraging, or facilitating" his act. (*People v. Beeler*, *supra*, 9 Cal.4th at p. 1004...; *People v. Prettyman*, *supra*, 14 Cal.4th at p. 259.) The evidence established that defendant and Mong Cha jointly instigated the shooting by confronting the victims about their gang affiliation. Defendant's complaint that his gun would not fire reasonably suggests he not only *knew* and *intended* the shooting, but would have *done the act himself* but for inadvertent mechanical failure. The new evidence did not raise a reasonable doubt, or indeed any doubt, about defendant's "overall culpability" as an aider and abettor....

Resp't's Ex. C at 8-10.

While the jury never deliberated on whether petitioner was an aider and abettor to the crimes and whether the shooter's actions were a natural and probable consequence of assault with a firearm (the target crime), there was sufficient evidence presented on the motion for new trial, including the testimony of Mong Cha and Judo Vang, for the trial court to hold petitioner, liable under both "aider and abettor" and "natural probable consequences" theories. RT 1239-1248.[4] Even if the prosecutor's actions were deemed misconduct, they did not have a substantial and injurious effect or influence on the outcome, particularly after taking account of the remedial

---

[4] The trial court's having resolved the motion for new trial by modifying the judgment, without ordering a new jury trial, was authorized by California Penal Code § 1181(6).

measures imposed by the judge in resolving the motion for new trial, namely the removal of three enhancements related to petitioner's personal use of a firearm to cause serious bodily injury. Id. The state court's actions did not result in a decision that was an unreasonable application of, or contrary to, federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, petitioner's claim must be denied.

### 3. Ineffective Assistance of Counsel

Petitioner also asserts his trial counsel rendered ineffective assistance by: (1) failing to object to the prosecutor's actions discouraging the co-defendants from testifying, Am. Pet. at 19-25 (Ground #3), and (2) failing to press for admission of Judo Vang's April 1998 statement to the police, id. at 28-29 (Ground #6). Petitioner raised these claims in his state habeas petitions filed in the California Court of Appeal and the California Supreme Court; both courts denied them without comment. Resp't's Exs. H-K. Petitioner requests an evidentiary hearing before this court on these claims. Am. Pet. at 8.

The Sixth Amendment guarantees the effective assistance of counsel. The Supreme Court has enunciated the standards for judging ineffective assistance of counsel claims. See Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 688. To this end, the defendant must identify the acts or omissions alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir.

1985); United States v. Schaflander, 743 F.2d 714, 717-18 (9th Cir. 1984) (per curiam). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

### A. Trial Counsel's Failure to Object to the Prosecutor's Scheme

Petitioner makes nine allegations[5] of prejudice to support his ineffective assistance claim. All relate to trial counsel's failure to object to the prosecutor's scheme to keep petitioner's co-defendants from testifying at his trial. Am. Pet. at 19-25.

Petitioner first claims he lost the opportunity to call his co-defendants as witnesses. However, as noted, the court considered their testimony at the motion for new trial. RT 1071-1178. Therefore, petitioner suffered no prejudice.

Next, petitioner states that Tou Vue, as driver of the other car, would have been "in a position to give potentially dispositive testimony." Am. Pet. at 23. However, even if Vue testified favorably for petitioner, Ben Xiong had the same vantage point as Vue and Xiong's testimony identified petitioner as the shooter. RT 249-250, 258-259. It was for the finder of fact to determine which witness to believe; Xiong's testimony, if believed, provided grounds for conviction. Petitioner suffered no prejudice here either.

Petitioner also states that the testimony of Cha and Vang was "not cumulative, was material, and favorable to Petitioner" and thus should have been received. Am. Pet. at 23. His characterization of the testimony is not inaccurate, but his argument does not establish prejudice, because the testimony of these witnesses was presented at the motion for new trial and

/////

---

[5] The allegations as petitioner has numbered them go up to ten allegations, but he has omitted the number 6; therefore only nine allegations are presented.

14

the court relied on it in striking the personal use enhancements. Here again, petitioner suffered no prejudice.

Petitioner re-states his first prejudice allegation blaming the absence of his co-defendants' testimony on the sentence-abeyance scheme of the prosecutor. Again, because their testimony was considered and used favorably in response to the motion for new trial, trial counsel's conduct did not prejudice petitioner.

Petitioner substitutes his own judgment retrospectively for that of his trial counsel and argues that had trial counsel made additional objections and sought different relief, his conviction would have been "vacated." These kinds of mere conclusory statements cannot support habeas relief. Because there was sufficient evidence presented at trial that petitioner was the shooter and the testimony of his co-defendants corroborated his participation, petitioner cannot meet his burden at this stage in this way.

Petitioner also alleges the trial court erred by not reversing his conviction instead of modifying the enhancements. Am. Pet. at 24. This conclusory statement does nothing to demonstrate ineffective assistance of counsel.

Next, petitioner claims that as a result of trial counsel's failure to object to the prosecutor's scheme, a "breakdown in the adversarial process" occurred where he was denied the right to have his co-defendants' testimony assessed by a jury. Again, the testimony of petitioner's co-defendants was considered by the judge and resulted in the removal of three personal use enhancements. Given the judge's remedial actions, taken in accordance with state law, petitioner does not demonstrate that but for counsel's unprofessional errors the result of the proceeding would have been different with a jury's involvement. Petitioner suffered no prejudice in this way either.

Petitioner also claims that had his co-defendants testified at trial, he would have responded differently to the claim by Judo Vang that petitioner said his gun jammed when he got back into the car. Even if petitioner testified as he now says he would have -- that he did not fire

15

his weapon and was trying to avoid repercussions from his fellow gang members -- there was sufficient evidence presented at trial, and corroborated by his co-defendants, to support the determination that petitioner was a principal and aider and abettor to the crimes of which he was convicted.  See, e.g., RT 249-250, 258-259.  He suffered no prejudice by not having a chance to respond differently to Judo Vang's statement.

Finally, petitioner concludes "it is reasonably probable that the jury would have acquitted Petitioner on all charges" had any of his co-defendants testified at trial.  As mentioned above, even with his co-defendants' testimony, petitioner still would have been held liable as a principal and aider and abettor.

None of the above-mentioned claims demonstrates there is a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different if it had conformed to petitioner's wishes.  Petitioner's claim of ineffective assistance of counsel for failure to object to the prosecutor's scheme must be denied.

### B.  Trial Counsel's Failure to Press for the Admission of Vang's Prior Statement

Petitioner argues that trial counsel should have moved for Judo Vang's prior statement to the police on April 25, 2008 to be admitted under California Evidence Code §1235 as a prior inconsistent statement.  He suggests that Vang's refusal to testify at petitioner's jury trial, even though he did not have the protection of the Fifth Amendment privilege against self-incrimination, amounts to "deliberate evasion," to which "inconsistency is implied," triggering California Evidence Code § 1235.[6]  Am. Pet. at 28 (Ground # 6); Traverse at 85:9-11.

/////

/////

---

[6] Section 1235 provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."  Section 770 essentially provides that an inconsistent statement may come in as long as the witness purported to have made the statement is available as a witness during trial or has an opportunity to respond and explain the statement.

16

In a prior statement he made to the police before trial, Vang said that when petitioner got back into the car, he said his gun had jammed; Vang did not know if petitioner had shot the gun before it jammed. CT 292-293, 316. Vang also said he heard shots fired from the gun of someone else, who he believed was Mong Cha. CT 295, 314-315.[7] At trial, Vang refused to testify, saying that if Mong Cha had been sentenced before he was called to testify, he would have provided substantive testimony. RT 783-786. A later declaration and statement by Vang, provided to petitioner's investigator and submitted in support of the motion for a new trial, was consistent with his prior statement to police in reporting petitioner's statement that his gun jammed; it was more clear that Mong Cha was in fact the shooter and that no shots were fired from the location Vang knew petitioner to have been in. CT 256. Vang's testimony at the hearing on the motion on the new trial was largely consistent with the latter declaration and statement. RT 1070-1142.

Considering the record as a whole, it is unreasonable to believe, as petitioner posits, that when first called to testify before the jury Vang refused to testify due to fear of the ramifications of prosecutor's sentence-abeyance scheme and at the same time was being deliberately evasive and untruthful. Additionally, because Vang's testimony at the motion for new trial was critical in providing the foundation for the removal of three personal-use sentence enhancements, its absence from the record made before the jury was not prejudicial. Petitioner's claim in this respect must be denied.

C. Request for Evidentiary Hearing on Claims of Ineffective Assistance

As noted, petitioner requests an evidentiary hearing on his claims of ineffective assistance of counsel. Am. Pet. at 8. A district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." 28 U.S.C.

---

[7] Mong Cha was also known as "Tattoo Man."

§ 2254(e)(2); Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). He must also "allege[] facts that, if proved, would entitle him to relief." Schell v. Witek, 218 F.3d 1017, 1028 (9th Cir. 2000). Petitioner has not demonstrated that any additional facts need to be determined in order to resolve the claims raised in the instant petition. Accordingly, an evidentiary hearing is not warranted on petitioner's claims. See Williams, 529 U.S. at 445; Earp, 431 F.3d at 1166.

    4. Sentencing on Theory of Liability on Facts Not Found by Jury

Petitioner's next claim is that his sentence violates his right to due process and to jury trial under the Constitution because it is based in part upon facts not found to be true by a jury. Am. Pet. at 26. Petitioner raised this claim in his state habeas petitions filed in the California Court of Appeal and the California Supreme Court; both courts denied the claim without comment. Resp't's Exs. H-K.

It appears petitioner is attempting to make a claim based on the line of cases resulting from Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the United States Supreme Court prohibited a state court from enhancing a defendant's sentence based on facts not found by the jury. In this case, the judge reduced petitioner's liability based on the statements of Cha and Vang at the motion for new trial. The judge upheld the underlying convictions and other enhancements because, as petitioner admits, "the jury unquestionably found [him] to be a 'principal' in an assault with a firearm." Am. Pet. at 26(A) (Ground # 4). As noted by the Third District Court of Appeal, petitioner's claim flows from his lack of understanding of principal and aider and abettor liability. That the jury never explicitly found that petitioner "knowingly and intentionally aided and abetted Mong Cha" and "the offenses committed by Mong Cha were the natural and probable consequences of an assault with a firearm" is irrelevant. As noted by the state superior court on habeas review, the jury's finding that petitioner was a principal is

/////

consistent with finding that he was an aider and abettor. Resp't's Ex. G at 1-2 (referencing inter alia Cal. Penal Code § 31). Petitioner's claim here as well must be denied.

### 5. Imposition of Enhancements in Violation of Conditional Plea Bargain

Petitioner claims his rights to due process were violated when the court imposed the two 25-year-to-life enhancements mentioned in Claim 1 above, in violation of his conditional plea agreement to gang enhancements under California Penal Code §186.22. Am. Pet. at 27. Petitioner raised these claims in his state habeas petitions filed in the California Court of Appeal and the California Supreme Court; both courts denied them without comment. Resp't's Exs. H-K.

As part of a tactical decision by trial counsel, petitioner stipulated to the admission of gang enhancements under §186.22, conditioned on his conviction of an underlying felony. This stipulation was to encourage the testimony of Judo Vang, although Vang ultimately refused to testify. RT 733-748. Petitioner was convicted by the jury of second degree murder and attempted murder, as noted above. Building on arguments made with respect to Claim 4 above, see pages 17-18 supra, petitioner asserts that because the underlying convictions were invalidated, as a result of the jury not convicting him on a theory of vicarious liability, so too should the enhancements be invalidated. This court already has found that the underlying convictions were valid; thus it finds the enhancements are valid as well.

### 6. Cumulative Effect of Constitutional Errors

Petitioner claims that the cumulative effect of the constitutional errors described above violated his right to due process and effective assistance of counsel. Although this claim was not presented in a state court, this court will recommend that the claims be denied on the merits. 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). The cumulative effect of a series of non errors, as found above, is a null set. This claim too should be denied.

### III. Conclusion

For the foregoing reasons, the court will order that petitioner's request for an evidentiary hearing on the claim of ineffective assistance of counsel be denied, and recommend that petitioner's application for a writ of habeas corpus be denied.

Accordingly, IT IS HEREBY ORDERED that petitioner's request for an evidentiary hearing on the issue of ineffective assistance of counsel is denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 5, 2009.

_____
U.S. MAGISTRATE JUDGE

3
yang0943.157